UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

RICHARD R.,[1]

        Plaintiff,

   v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

       Defendant.

Case. No. 1:19-cv-00916-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Plaintiff Richard R. seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.  This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3).  For the reasons set forth below, that decision is REVERSED and REMANDED for further proceedings.

## PROCEDURAL HISTORY

Plaintiff protectively filed for SSI on June 23, 2015, alleging disability beginning on

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of his last name.

1 – OPINION AND ORDER

January 2, 2014.  Tr. 158-75.  His application was initially denied on October 14, 2015, and

upon reconsideration on March 24, 2016.  Tr. 81-84, 88-90.  Plaintiff requested a hearing

before an Administrative Law Judge ("ALJ"), which took place on March 27, 2018.  Tr. 34-

57.  After receiving testimony from plaintiff and a vocational expert, ALJ B. Hobbs issued a

decision on May 2, 2018, finding plaintiff not disabled within the meaning of the Act.  Tr.

15-23.  The Appeals Council denied plaintiff's request for review on April 12, 2019.  Tr. 1-

6.  Therefore, the ALJ's decision is the Commissioner's final decision and subject to review

by this court.  20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record.  42

U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh

the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm

simply by isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759

F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th

Cir. 2007)).  This court may not substitute its judgment for that of the Commissioner when

the evidence can reasonably support either affirming or reversing the decision.  *Parra v.

Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Instead, where the evidence is susceptible to

more than one rational interpretation, the Commissioner's decision must be upheld if it is

"supported by inferences reasonably drawn from the record."  *Tommasetti v. Astrue*, 533

F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date of June 23, 2015. Tr. 17.

At step two, the ALJ determined plaintiff suffered from the following severe impairments: osteoarthritis, degenerative disc disease, and degenerative joint disease. *Id.* The ALJ recognized other impairments in the record, i.e., hyperlipidemia and anxiety, but concluded that the hyperlipidemia was non-severe and the anxiety did not cause more than minimal limitations. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 18. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined he could perform light work as defined in 20 C.F.R. § 416.967(b), with the exception that he could occasionally stoop, crouch, kneel, and crawl; frequently climb ramps and stairs; frequently finger and handle with the bilateral upper extremities; occasionally climb ladders, ropes, and scaffolding; but cannot tolerate exposure to extreme heat and cold. Tr. 18-19.

At step four, the ALJ found plaintiff unable to perform past relevant work. Tr. 21-22.

At step five, the ALJ found that considering plaintiff's age, education, work

experience, and RFC, he could perform jobs that existed in significant numbers in the national economy, including storage facility clerk, sales attendant, and marker. Tr. 22-23. Thus, the ALJ concluded plaintiff was not disabled. Tr. 23.

## DISCUSSION

Plaintiff argues that the ALJ: (1) improperly discounted his subjective symptom testimony; (2) erroneously assessed the medical opinion evidence of treating physician Dr. Wendell Heidinger and state agency physicians Dr. Mary Ann Westfall and Dr. Neal Berner; and (3) improperly rejected the lay witness testimony of his wife. Alternatively, plaintiff asserts that his case was adjudicated by an unconstitutionally appointed ALJ and should be remanded for a new hearing with a different and constitutionally appointed ALJ.

## I.      Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas*

*v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ first recounted plaintiff's claims and testimony in great detail. Tr. 19-20. Then, after "careful consideration," the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 20.

Specifically, the ALJ found that the "medical findings do not support the extent of limitation alleged by" plaintiff. Tr. 20. With respect to plaintiff's back pain, the ALJ noted plaintiff "testified that he is unable to lie on his back or sit and stand for longer than one hour." *Id.* However, the ALJ observed:

> Radiologic imaging of September 2017 reveals moderate to severe
> degenerative disc disease at LS-I associated with marginal osteophytes

(8F/21). All remaining intervertebral disc spaces are preserved throughout the lumbar spine with normal anatomical alignment and no evidence of spondylosis. Office treatment records show that he ambulates with a normal gait with no use of an assistive device (2F/21, 3F/2, 4, 8, 12, 27, 4F/2, 5, 5F/2, 5). Progress notes dated September 6, 2017, indicate that he demonstrates full range of motion, flexion, extension, side to side bending, and rotation to the right and left (8F/13). His treating provider advised him to take ibuprofen as needed for his symptoms of back pain, which is not suggestive of a disabling back impairment (8F/20).

Tr. 20. The medical records cited by the ALJ support the ALJ's observations and conclusions.

Regarding plaintiff's chronic hand and wrist pain, the ALJ synopsized plaintiff's medical records, including his diagnosis of bilateral carpel tunnel syndrome and osteoarthritis, history of surgery for carpel tunnel syndrome on his right hand, and x-ray findings of moderate to severe degenerative changes in the PIP and DIP joints of essentially all of his fingers. Tr. 20. However, the ALJ concluded that a chart note indicating that plaintiff's bilateral hand pain was "incapacitating" was inconsistent with (1) plaintiff's testimony that he continued to perform odd jobs and automotive repair, and (2) a chart note from June 14, 2016, which stated that plaintiff "reports his current level of activities are slightly impaired" and "[h]e is currently employed." Tr. 20 (citing Tr. 347).

The ALJ also cited to the "End of Care" report for plaintiff's occupational therapy, which he engaged in between December 2016 through April 2017:

The claimant endorsed occasional sharp pain with pick and rip and occasional numbness and tingling in the median nerve that is significantly better after he underwent carpal tunnel release. He stated that he needs to use a chainsaw to cut firewood but he is concerned it may be exacerbating his symptoms (6F/4). In April 2017, the claimant reported that his hands are feeling better overall and they are less stiff in the mornings. Ms. Haro noted that his pain is directly related to overusing his hands for heavier activities of daily living. Heat and stretching improve his pain and his functional deficits are noted as "continued but improving difficulty using chain saw, any activity requiring loaded pinch/fine motor manipulation in bilateral hands, difficulty gripping a steering

wheel, and difficulty managing clothing fasteners and opening jars, lids and packages" (6F/4). Objective testing reveals mild discomfort with grip and pinch testing, normal sensation in all nerve distributions bilaterally but overall positive response to therapeutic exercise, high voltage pulsed current (HVPC) electrotherapy, and cold laser therapy "are helping to decrease and better manage ongoing and chronic pain" (6F/4).

Indeed, this "End of Care" report indicates plaintiff's "current pain level" was moderate and measured at 5/10, his instability was minimal, his loss of function and motion was moderate, and his weakness was moderate. Tr. 358. Plaintiff had occasional numbness and tingling in median nerve distribution bilaterally, but this was "significantly better" after he had carpel tunnel surgery and stopped working full time as a car mechanic. Importantly, plaintiff said his "[h]ands are feeling better overall." Tr. 359. It was further noted that plaintiff's pain was "directly related to overusing his hands for heavier AOL," and "[g]ripping with heavy tasks does not cause sharp pain in CMC joints of thumbs but thumb 'catching' with light ADL such as picking up a coffee cup can cause severe pain." *Id.* Also, plaintiff "stated that his hands feel a lot better after heat and stretch." *Id.* "Therapy efforts, exercises, HVPC and cold laser are helping to decrease and better manage ongoing and chronic pain." *Id.* The therapy records indicate that plaintiff had minimal difficulty with tasks such as writing, brushing his teeth, and tying his shoes, and his "rehab\potential is good." Tr. 359, 364. Even his "[b]ilateral pinch strength [was] improving which is making these tasks somewhat easier and less painful." Tr. 364. Thus, the ALJ's finding that the "medical findings do not support the extent of limitation alleged by" plaintiff is supported by substantial evidence. Tr. 20.

Moreover, the ALJ did not rely only on the medical records in rejecting plaintiff's testimony. *See Young v. Astrue*, No. CIV. 09-23-AC, 2010 WL 331781, at *5 (D. Or. Jan. 21, 2010) (holding that while the ALJ may not require that medical evidence corroborates

the degree of symptom testimony the claimant proffers, the ALJ may consider a claimant's medical record in conjunction with other credibility factors).  Rather, the ALJ also found that plaintiff "treats his symptoms conservatively with over the counter medications and he denied currently medications or receiving treatment in his hearing testimony."  Tr. 21.  In fact, at the hearing, plaintiff testified that he did not take medication, except for some occasional ibuprofen or a hot bath with Epsom salts.  Tr. 432.  Plaintiff's conservative treatment at the time of the hearing was a clear and convincing reason to reject the severity of plaintiff's subjective symptom testimony.  *See Bowman v. Colvin*, 228 F. Supp. 3d 1121, 1130 (D. Or. 2017) (upholding ALJ's rejection of plaintiff's testimony because her treatment since her alleged onset date had been fairly conservative, where record supported such a finding).

Plaintiff alleges the ALJ erred in rejecting his testimony on the basis that he did odd jobs and cut firewood with a chain saw.  As noted above, the ALJ rejected evidence that plaintiff's bilateral hand pain was "incapacitating" because it was inconsistent with his testimony that he continued to perform automotive repair.  Tr. 20.  Because performing some automotive repair tasks is indeed inconsistent with a finding of incapacitation, the ALJ did not err.  *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."), *superseded on other grounds by* 20 C.F.R. § 404.1502(a)(8).

Regarding plaintiff's use of a chain saw, the record contains numerous references to the fact that plaintiff cut wood and used a chain saw, including occupational therapy records from 2016 and 2017 indicating that plaintiff was able to use a chain saw for 15-20 minutes

before needing a break. *See* Tr. 360, 364; *see also* Tr. 323 (May 20, 2015 chart note indicating that plaintiff "has to cut all the firewood"). In fact, plaintiff's occupational therapy goal was to be able to continue using a chain saw. Tr. 360. Although plaintiff testified at the hearing that he no longer used a chain saw, the ALJ did not err in citing to portions of the record during the relevant period that referenced plaintiff's chain-saw use. Moreover, to the extent there was error, it was harmless, as the ALJ cited at least one other valid reason to reject plaintiff's subjective symptom testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding error by ALJ in credibility determination is harmless "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion").

## II.     Medical Opinion Evidence

### A.     Relevant Law

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or

other factors the ALJ deems material to resolving ambiguities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

### B.   Dr. Wendell Heidinger

Plaintiff argues the ALJ should have given greater weight to the medical opinion of treating physician Dr. Heidinger.[2]  Pl. Br. 9-12.

On January 5, 2017, Dr. Heidinger filled out a "Physical Assessment" form where he indicated diagnoses of degenerative disc disease and severe osteoarthritis of the wrists.  Tr. 385.  He opined plaintiff's "symptoms associated with [his] impairments [were] severe enough" that they would "constantly . . . interfere with the attention and concentration required to perform simple work-related tasks."  *Id.*  Specifically, Dr. Heidinger opined that plaintiff would need to recline or lie down in excess of the typical breaks during an eight-hour workday.  He also opined that plaintiff cannot walk a city block without rest or significant pain; can sit for up to two hours; can stand or walk for up to one hour; can lift up to 20 pounds; cannot use his hands to grasp, turn, or twist objects; cannot use his arms for reaching; and is limited to using his fingers for fine manipulation no more than 20 percent of the day.[3]  Tr. 385-86.  Dr. Heidinger concluded that plaintiff would be absent more than four times per month due to his impairments.  Tr. 396.

The ALJ gave Dr. Heidinger's opinion "little weight" because it was "not corroborated by any of the evidence of record that demonstrates no difficulty with

---

[2] Inexplicably, Dr. Heidinger's questionnaire is dated January 5, 2017, Tr. 386, but treatment notes appear to indicate that plaintiff presented to "establish care" with Dr. Heidinger on September 6, 2017.  Tr. 397.

[3] For the purposes of the assessment, use of "hands" means "grasp, turn, twist objects"; "fingers" means "fine manipulation"; and "arms" means "reaching."  Tr. 385.

ambulation."[4]  Tr. 21.  Specifically, the ALJ observed "[o]ffice treatment records show that [plaintiff] ambulates with a normal gait with no use of an assistive device."  Tr. 20 (citing Tr. 293, 305, 307, 311, 315, 330, 335, 338, 345, 348).  Indeed, there are numerous references in the record that plaintiff "ambulates without difficulty."  *See id.*; *see, e.g.*, Tr. 348.  An incongruity between questionnaire responses and the medical records is a specific and legitimate reason for rejecting a doctor's opinion regarding limitations.  *Tommasetti*, 533 F.3d at 1041.

Dr. Heidinger also opined about plaintiff's inability to use his hands due to severe osteoarthritis of the wrists.  *See* Tr. 385.  The ALJ rejected Dr. Heidinger's opinion, citing "improved functionality of [plaintiff's] hands subsequent to the completion of occupational therapy in 2017."  Tr. 21.  This was a specific and legitimate reason for rejecting Dr. Heidinger's opinion.

Plaintiff points to portions of the record indicating he suffered more severe symptoms of chronic hand pain and contends the ALJ was not permitted to "pick and choose" evidence that was unfavorable to him.  Pl. Br. 12-13; *see Garrison*, 759 F.3d at 1017 n.23 (holding an ALJ is not permitted to "cherry-pick" from mixed results to establish a conclusion based only on the evidence that supports a denial of benefits); *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (finding that "the ALJ's specific reason for

---

[4] The Commissioner argues that the ALJ "permissibly reject[ed]" Dr. Heidinger's opinion because it was in the form of a "check off report that [did] not contain any explanation of [his] conclusions."  Def. Br. 7-8 (citing *Molina*, 674 F.3d at 1111).  The court may not consider this argument, however, because the ALJ did not proffer this reason in his decision.  *Stout v. Commissioner*, 454 F.3d 1050, 1054 (9th Cir. 2006) (a court is "constrained to review the reasons the ALJ asserts") (internal quotation omitted).  Moreover, case law directs that an ALJ may not reject relevant medical testimony merely because it is presented in check-box form.  *Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017).

rejecting [a physician's] medical opinion [was] not supported by substantial evidence"

because, in part, "the ALJ selectively relied on some entries in [the plaintiff's]

records . . . and ignored the many others that indicated continued, severe impairment").

However, plaintiff's occupational therapy records, which are cited at length above,

*see*, *supra*, Sect. I, are inconsistent with Dr. Heidinger's opinion. Again, this incongruity is

a specific and legitimate reason for rejecting Dr. Heidinger's opinion regarding plaintiff's

limitations. *Tommasetti*, 533 F.3d at 1041. While another interpretation of the medical

evidence may be more favorable to plaintiff, the court may not substitute its judgment for

that of the ALJ where the ALJ's interpretation is reasonable. *Thomas*, 278 F.3d at 954; *see*

*also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (holding

the law is clear that "[w]hen evidence reasonably supports either confirming or reversing

the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ").

### C.    Dr. Mary Ann Westfall and Dr. Neal Berner

Plaintiff argues the ALJ erred by failing to explain why the disabling portions of the

state agency physicians' opinions were not included in the RFC. Pl. Br. 9; *see* Tr. 14-15.

Plaintiff describes the "disabling portions" as those portions of the state agency physician's

opinions that he "could lift up to 10 pounds at any time, and could only occasionally push, pull,

handle, and finger." Pl. Br. 14 (citing Tr. 64, 76).

The ALJ found that plaintiff had the residual functional capacity to perform light work as

defined in 20 C.F.R. § 416.967(b), which "involves lifting no more than 20 pounds at a time with

frequent lifting or carrying of objects weighing up to 10 pounds." The state agency physicians,

Dr. Westfall and Dr. Berner, concluded that plaintiff could "occasionally," i.e., one-third or less

of an eight-hour day, "lift and/or carry . . . 10 pounds," and "frequently," i.e., one-third up to

two-thirds of an eight-hour day, "lift and/or carry . . . less than 10 pounds." Tr. 63, 75. Thus, the RFC is consistent with the state agency consultants' opinions in this regard.

Dr. Westfall also concluded that plaintiff's "[h]and and wrist DJD limit bilateral handling and fingering to occasionally." Tr. 64. On reconsideration, Dr. Berner found the same, noting that "occ bil handling/fingering limits is still appropriate." Tr. 76. The RFC, however, provides that plaintiff can "frequently finger and handle with the bilateral upper extremities." Tr. 18.

The ALJ gave the state agency consultant's opinions "some weight to the extent that they are generally consistent with the medical evidence of record," but failed to provide any explanation for rejecting their opinion that plaintiff should be limited to only occasional handling/fingering. Tr. 21. An ALJ may not ignore the opinions of state agency consultants regarding the nature and severity of impairments and must explain the weight given to them. SSR 96–6P(1)–(2), *available at* 1996 WL 374180, at *1 (emphasis added); *see also Sawyer v. Astrue*, 303 F. App'x 453, 455 (9th Cir. 2008) ("Although the ALJ noted that he agreed with the limitations assessed by the state agency consultants, his RFC assessment did not accurately include the limitations found by [the state agency consultants] and his decision did not otherwise explain the weight he gave these opinions."). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)).

The Commissioner argues that when the agency explains its decision with "less than ideal clarity," the court "must uphold it if the agency's path may reasonably be discerned."

Def. Br. 10 (quoting *Molina*, 674 F.3d at 1121).  While that is a correct statement of the law, here, the ALJ failed to proffer a discernable path for rejecting the state agency physicians' opinion that plaintiff was limited to occasional handling/fingering.  This constitutes error.

## III.    Lay Witness Testimony

Plaintiff argues that the ALJ failed to properly evaluate the opinions of his wife.  Pl. Br. 18-19.  The ALJ assigned plaintiff's wife's statements "little weight, as her description of the Claimant's limitations is not consistent with the medical evidence."  Tr. 21.

As discussed above, however, the ALJ did not err in discounting plaintiff's subjective symptom testimony on the basis that it conflicted with the medical evidence.  *See supra* Sect. I; *see also* Tr. 20.  This is a valid basis for rejecting plaintiff's wife's testimony as well.  *See* Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (where a claimant's testimony has been properly rejected, lay witness testimony that is similar thereto may be rejected for the same reasons used to reject claimant's testimony).  Accordingly, the ALJ properly evaluated the lay testimony from plaintiff's wife.

## IV.    Appointment Clause

Plaintiff asserts that the ALJ who oversaw his hearing was unconstitutionally appointed and argues the ALJ's "application should be immediately remanded for a new hearing with a different and constitutionally appointed ALJ."  Pl. Br. 19-22.  In support of his argument, plaintiff relies on the Supreme Court's decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2051 (2018).  There, the Court held that Securities and Exchange Commissioner ("SEC") ALJs were "Officers of the United States" subject to the requirements of the Appointments Clause.  *Lucia*, 138 S. Ct. at 2051-55; *see also* U.S. Const. art. II, § 2, cl. 2.  Thus, because the ALJ at issue in *Lucia* was

not properly appointed "a new hearing before a properly appointed official" was the appropriate remedy. *Id.* (citing *Ryder v. United States*, 515 U.S. 177, 182-83) (1995)).

Appointment Clause challenges, however, are not jurisdictional and forfeited if they are not timely asserted. *See Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 878-79 (1991); *see also Kabani & Co., Inc. v. U.S. Sec. & Exch. Comm'n*, 733 F. App'x 918, 919 (9th Cir. 2018) (holding that Appointment Clause challenge was forfeited where not timely raised). Indeed, *Lucia* conditioned relief in part upon making "such a *timely* challenge." *Lucia*, 138 S. Ct. at 2055 (emphasis added). Further, in the Ninth Circuit, "claimants . . . must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999); *see also Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (explaining that *Meanel's* preservation requirements remain binding on courts within the Ninth Circuit). Plaintiff failed to raise this challenge at the administrative level and has therefore waived it. *See Younger v. Comm'r of Soc. Sec. Admin.*, No. CV-18-02975-PHX-MHB, 2020 WL 57814, at *5 (D. Ariz. Jan. 6, 2020) ("Other district courts in this circuit have found that a claimant's failure to raise an Appointments Clause challenge before the ALJ forfeits the issue upon judicial review."); *Byrd v. Berryhill*, No. 1:17–cv–01619–SKO, 2019 WL 95461, at *6 (E.D. Cal. Jan. 3, 2019) ("However, to the extent *Lucia* applies to Social Security ALJs, [the claimant had] forfeited the issue by failing to raise it during [her] administrative proceedings.") (citation and internal quotation marks omitted; bracketing in original); *Joyce Marie T. v. Comm'r of Soc. Sec. Admin.*, No. 6:18-cv-00191-JR, 2018 WL 7078674, at *7 (D. Or. Nov. 30, 2018) (rejecting Appointments Clause challenge in part because the "objection was not made before the Agency"); *cf. Steve Edward L. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-cv-00072-MK, 2019 WL

6840846, at *2 n.4 (D. Or. Dec. 16, 2019) (holding that Appointment Clause challenges are forfeited when not properly raised).

## V.    Remand

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler*, 775 F.3d at 1099. Plaintiff does not request that this court remand for immediate payment of benefits; therefore, the court need not conduct a credit-as-true analysis. *Brown-Hunter*, 806 F.3d at 495.

As discussed above, the ALJ's decision failed to provide legally sufficient reasons to reject the conclusions by Dr. Westfall and Dr. Berner that plaintiff should be limited to occasional handling and fingering. Accordingly, the court remands for further administrative proceedings to properly examine the opinions of Dr. Westfall and Dr. Berner, and conduct any additional necessary proceedings, including, but not limited to, reassessing plaintiff's RFC, and determining whether plaintiff can perform other work in the national economy.

## ORDER

For the reasons discussed above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED August 31, 2020.

_____
/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge